AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
06/21/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
06/21/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____KH_____ DEPUTY

United States of America

v.

GILBERTO ORTIZ-CERVANTES,

Defendant.

Case No.  8:22-mj-00449-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of <u>June 19, 2022</u>, in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(i) | Bringing an Alien to the United States at a Place Other Than a Designated Port of Entry |

This criminal complaint is based on these facts:

*Please see attached affidavit.*   ☒ Continued on the attached sheet.

/s/ Luke Rasmussen
*Complainant's signature*

Luke Rasmussen, Special Agent (HSI)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  June 21, 2021

/s/ Autumn D. Spaeth
*Judge's signature*

City and state:  Santa Ana, California

Hon. Autumn D. Spaeth, U.S. Magistrate Judge
*Printed name and title*

RW:hc

AFFIDAVIT

I, Luke Rasmussen, being duly sworn, declare and state as follows:

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been employed by HSI since July 2008 and am currently assigned to the Los Angeles Border Enforcement Security Taskforce Maritime ("LA BEST Maritime") in Los Angeles, California. LA BEST Maritime is a multi-agency task force aimed at identifying, targeting, and eliminating threats and vulnerabilities to the security of the United States related to the Los Angeles/Long Beach seaport complex, as well as the surrounding transportation and maritime corridors.

2. I have received formal training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. Since graduating from FLETC in 2008, I have participated in number of different types of federal investigations, including firearms offenses, document and immigration benefit fraud, alien smuggling violations, gang investigations, investigations involving national security, and allegations involving public corruption. I have been actively involved in physical and electronic surveillance, the execution of search and arrest warrants, and the arrests of numerous drug and firearm smugglers. I have analyzed seized records, physical evidence, and recorded conversations. I have interviewed and debriefed confidential informants, criminal suspects, and other

witnesses who have extensive knowledge of the inner workings of criminal organizations.

## I. PURPOSE OF AFFIDAVIT

3.   This affidavit is made in support of a criminal complaint against and an arrest warrant for Gilberto Ortiz-Cervantes ("ORTIZ") for a violation of Title 8, United States Code, Section 1324(a)(1)(A)(i): Bringing an Alien to the United States at a Place Other Than a Designated Port of Entry.

4.   Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly.  Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or listened to a recording of the statement, or the statement was reported to me by another law enforcement officer, either directly or in a written report.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. SUMMARY OF PROBABLE CAUSE

5.   On June 19, 2022, a Customs and Border Protection vessel stopped a pleasure craft off the coast of Seal Beach,

California, within U.S. territorial waters. As the patrol boat neared the pleasure craft, officers observed electronic devices being thrown into the water.

6. The eight occupants of the vessel were interviewed and admitted to being in the United States unlawfully. ORTIZ, later identified as the captain, admitted in interviews that he was attempting to smuggle the seven passengers into the United States via Long Beach, California (which is not a designated port of entry). Three of the passengers, Sonya Del Carmen MARCONI-Garcia (Material Witness #1), Oralia MARTINEZ (Material Witness #2), and Jairo Filiberto RODRIGUEZ Garcia (Material Witness #3), identified ORTIZ as the captain of the vessel, and told investigators that they were being smuggled into the United States.

### III. STATEMENT OF PROBABLE CAUSE

7. Based on my conversations with law enforcement officers, review of investigative reports, and my own participation in this investigation, I learned the following:

8. On June 19, 2022, United States Customs and Border Protection, Marine Vessel call-sign 'M-858' was conducting inshore patrol operations off the coast of Seal Beach, California, within Zone 69M of San Clemente Border Patrol Station's Area of Responsibility. They spotted a white, 26-foot cuddy-cabin style vessel, with an inboard/outboard motor bearing California registration CF6152 PW. Officers observed four adult occupants on the vessel, acting in an unnaturally stiff manner, and avoiding eye contact with the marked patrol vessel. Some of

the occupants onboard the vessel, described more commonly as a "pleasure craft," were seen wearing personal flotation devices (PFDs). The patrol officers believed this was an indicator of human smuggling, since most adults in the California Coastal Region do not wear PFDs while pleasure boating. As the marked patrol boat neared the pleasure craft, officers witnessed what appeared to be electronic devices being thrown into the water, another indication that the vessel was participating in an illegal human smuggling operation.

9. After witnessing electronic devices (presumed to be telephones and/or GPS units) being thrown into the water, the patrol boat activated its emergency lights and equipment to stop the vessel and further investigate. Officers boarded the pleasure craft and detained all eight individuals to conduct an immigration inspection to determine alienage and admissibility.

10. The eight individuals were ORTIZ, later identified as the captain of the vessel; Sonya Del Carmen MARCONI-Garcia (Material Witness #1); Oralia MARTINEZ (Material Witness #2); Jairo Filiberto RODRIGUEZ Garcia (Material Witness #3); Jose Juan Infante; Juan Pablo Martinez Hernandez; Lorenzo Raphael Avilez-Sanchez; and Ramiro Diaz De Leon Gomez. All eight were determined from the interviews to be present in the United States unlawfully and without permission. The vessel and its occupants arrived back on land at approximately 2:50 p.m. All eight subjects were arrested, and the vessel was seized.

11. At approximately 2:55 p.m., Supervisory Border Patrol Agent Mazur advised ORTIZ of his Miranda Rights in the Spanish

language.  ORTIZ responded that he did not want a lawyer present. All the subjects were transported from the U.S. Coast Guard station to the San Clemente Border Patrol station for further processing.

    A.    <u>Interviews of ORTIZ</u>

    12.  On June 19, 2022, at 7:15 p.m., Border Patrol Agents (BPA) Lopez and Rojas interviewed ORTIZ.  ORTIZ was asked if he wanted Mexico's consular office notified of his arrest.  He stated he did not.

    13.  ORTIZ told agents the following: He is a citizen and national of Mexico.  He was born in Mazatlán, Mexico.  ORTIZ last entered the United States on June 19, 2022.  ORTIZ stated he entered the United States on a boat that was destined for Long Beach, California.  ORTIZ said he had been previously removed from the United States and that he has never applied to the Attorney General of the United States for permission to re-enter the U.S.  ORTIZ admitted he knew it was illegal to re-enter the U.S after being deported.  ORTIZ admitted to driving/smuggling illegal aliens at the time of his encounter, that he was attempting to unlawfully transport seven individuals, and that he knew that all seven individuals and himself were present illegally in the U.S.

    14.  On June 20, 2022, at approximately 1:06 a.m., BPA Canel and I interviewed ORTIZ.  BPA Canel conducted the interview in the Spanish language and read ORTIZ his <u>Miranda</u> rights again. ORTIZ again agreed to speak with agents.

15.  ORTIZ confirmed the statements he made during his earlier interview.  ORTIZ further told us that this was his third attempt to smuggle in illegal aliens.  ORTIZ said the first attempt was unsuccessful when the operation was intercepted by the Orange County Sheriff's Department in Newport Beach, California.  The second smuggling attempt was unsuccessful when he attempted to land his boat with illegal aliens in Newport Beach, California, in September 2021.  ORTIZ stated that he was later charged and convicted for that specific alien smuggling event and sentenced to eight months in federal prison.  ORTIZ stated he was released from prison and returned voluntarily to Mexico.  ORTIZ said he chose to attempt a third maritime smuggling operation approximately 20 days after his release, which was what led to this instant arrest.  ORTIZ stated he knew that neither he nor the individuals present on the boat were in the United States lawfully, and indicated that he was headed to Long Beach to drop the individuals off.  ORTIZ stated that, unlike the previous two attempts (where he was to be paid $500 dollars per person smuggled), he was instead piloting the vessel with the intent of being allowed to work for the smuggling organization as a load driver in the United States.

16.  ORTIZ told investigators he used the same Mexican smuggling organization all three times.  ORTIZ stated that "Juan" is the boss, but he has never seen Juan and only communicates with Juan over the phone.  ORTIZ stated he was the one piloting the vessel, and admitted to throwing two cell phones into the water.  ORTIZ said he was instructed by Juan to dispose of

6

electronic evidence if it appeared he was going to be apprehended by authorities.

      B.    <u>Interview of Sonya Del Carmen MARCONI-Garcia</u>

    17.    On June 20, 2022, BPA Nevares and I interviewed MARCONI, a passenger on the vessel. MARCONI was interviewed in her preferred language of Spanish. MARCONI was advised of her consular rights and stated she did not want her country's consular office notified at present time.

    18.    MARCONI stated that she is a citizen and national of El Salvador. She admitted that she did not have any legal documents to allow her to remain in the United States. MARCONI stated she came to the United States to be with her brothers and children, many of whom are United States citizens.

    19.    MARCONI stated that the smuggling organization she used to facilitate her attempted unlawful entry was recommended to her by friends. MARCONI's brothers were going to pay the organization $15,000 upon her successful arrival. MARCONI stated she departed on a panga fishing vessel from a beach somewhere near Tijuana, Mexico, and was later transferred to the pleasure craft. MARCONI stated she was below board during the journey. MARCONI said that at one point during her journey, she felt seasick and requested the captain of the vessel allow her to return to Mexico. MARCONI said that request was denied. MARCONI was shown a photo lineup with photographs of the eight individuals on the vessel, and she identified ORTIZ as the boat captain. MARCONI stated that she feared for her life because of the speed at which the boat was traveling, and that she hit her

head during the journey because of how fast the boat was being driven.

    C.    <u>Interview of Oralia Martinez</u>

20. On June 20, 2022, BPA Canel and I interviewed MARTINEZ, a passenger on the vessel, in Spanish. MARTINEZ was advised of her consular rights and stated that she wanted her country's consular office notified of her arrest.

21. MARTINEZ advised us that she was a citizen of Mexico and was attempting to enter the U.S. with intentions of making it to Stockton, California. MARTINEZ stated she was going to pay the smuggling organization $13,000. MARTINEZ said she first got onto a boat from a pier in Ensenada, Mexico, which ultimately shuttled her to the pleasure craft. MARTINEZ was shown a photo lineup and identified ORTIZ as the boat captain.

    D.    <u>Interview of Jairo Filiberto RODRIGUEZ-Garcia</u>

22. On June 20, 2022, BPA Nevares and I interviewed RODRIGUEZ, a passenger on the vessel, in Spanish. RODRIGUEZ was advised of his consular rights and stated he wanted his country's consular office notified of his arrest.

23. RODRIGUEZ stated that he intended to pay $18,000 dollars to the smugglers for their assistance in traveling to California. The smugglers were recommended to him through his family. RODRIGUEZ said that his cousins and uncle were going to pay the fee. RODRIGUEZ said he departed from Rosarito, Mexico on a panga-style fishing vessel, which shuttled him to the pleasure craft.

24. RODRIGUEZ was shown a photo lineup and identified ORTIZ as the boat captain. RODRIGUEZ stated that he feared for his life because the boat was driven too fast, and the speed, mixed with ocean conditions, caused the passengers below board to be thrown around from side to side.

## IV. CONCLUSION

25. For all the reasons described above, there is probable cause to believe that Gilberto ORTIZ-Cervantes has committed a violation of Title 8, United States Code, Section 1324(a)(1)(A)(i): Bringing an Alien to the United States at a Place Other Than a Designated Port of Entry.

Attested to by the applicant in
accordance with the requirements of
Federal Rule of Criminal Procedure
4.1 by telephone on this  21  day of
June 2022.


     /s/ Autumn D. Spaeth
UNITED STATES MAGISTRATE JUDGE

9